**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

USDC- GREENBELT
'26 AUG 12 PM2:09

JOHN MICHAEL MILLER, JR.,

Plaintiff,

v.

DANIEL GALBRAITH,
PAUL COLE,
LT. LEWIS,
CAPT. ELLIOT, and
JEFFREY R. GAHLER,

Defendants.

Civil Action No. 1:25-cv-1269-LKG

Dated: August 12, 2026

**MEMORANDUM**

Plaintiff John Michael Miller, Jr. filed this civil rights action concerning his claim that his First Amendment right to practice the religion of his choice while confined to the Harford County Detention Center ("HCDC") was violated. ECF No. 1. In response, Defendants Warden Daniel Galbraith, Chaplain Paul Cole, Lt. Lewis, Captain Elliot, and Sheriff Jeffrey R. Gahler have filed a Motion to Dismiss asserting that Miller has not adequately pleaded a claim under the First Amendment or Religious Land Use and Institutionalized Persons Act ("RLUIPA") claim. ECF No. 10. Miller has filed a Motion to Appoint Pro-Bono Counsel and an Opposition to Defendants' dispositive motion. ECF Nos. 12 and 13. No hearing is required. *See* D. Md. Local R. 105.6 (2025). For the reasons set forth below, Defendants' Motion shall be granted and the complaint dismissed.

**Background**

Miller claims that on March 12, 2025, he turned in a grievance so that he could get an official answer regarding what Jewish inmates are entitled to receive for Passover on the "Seder plate" and to "let the institution know regular 'kosher' . . . meals will not suffice" during Passover. ECF No. 1 at 2. Rather, according to Miller, during Passover, the Jewish inmates would need kosher meals which "do not contain leaves." *Id.* He states that he also wanted an

"official answer" because he had witnessed preferential treatment being shown for Christian practices such as Warden Galbraith allowing Christian evangelists to tour the jail, sing Christmas Carols, and to distribute apple juice and Oreos as Christmas gifts. *Id*. at 3. Further, the entire population was provided with a traditional Christmas dinner while Jewish inmates did not receive any special meals during Chanukah. *Id*. Additionally, during the month of March 2025, Miller claims Warden Galbraith made certain that Muslim inmates were able to take part in the Ramadan holiday for the entire month. *Id*.

Miller claims that he began to realize the lack of a response to his request was likely retaliation for his prior litigation. *Id*. at 3. He states he then wrote to Chaplain Cole regarding the needs of the Jewish inmates for the celebration of Passover and what should be included on the Seder plate. On April 10, 2025, Chaplain Cole visited Miller's cell in an effort to get him to talk to an orthodox rabbi, Shalom Reindorp, in another attempt to interrogate him as to whether his religious beliefs are authentic. *Id*. He states that this was the tenth attempt to interview him in this manner. *Id*. Miller describes these attempts to question him by Cole as discriminatory and in support of his claim recites questions he was asked such as: who is your Rabbi? Are your parents Jewish? If dead, what Jewish graveyard are they in? *Id*. Miller filed grievances regarding these interviews and refused to talk to the orthodox Rabbi because he is not "of the orthodox sect of Judaism," rather, he states that he is a "conservative Jewish member and speaking to the Rabbi that the chaplain hired to interrogate me is not something [he] care[s] to do." *Id*.

On April 11, 2025, Miller asked Deputy Griffin to contact Cole to ask what was going on with his Passover items because he had never before had such a problem with practicing Passover or observing his faith in any other detention center or correctional facility in Maryland. ECF No. 1 at 3. Although he was told by Griffin that the administration was working on it, by the end of the day no more information was provided. *Id*. Miller explains that by dinner on April 11, 2025, Jews should have begun abstaining from all leaven containing products and Cole had stated he was well aware of this fact. Jewish inmates were served flour tortillas with their Kosher meals which Miller states are "not approved for Passover." *Id*.

On April 12, 2025, Miller claims that he had a conversation with Deputy Scaffidi regarding Passover and the items required for the Seder meal. *Id*. at 3-4. After Scaffidi spoke with Sgt. Medor, Miller states he was told that Galbraith, Chaplain Cole, and Captain Elliot had

met and decided they were not going to allow Miller to celebrate Passover, nor would they provide "the Seder plate foods" for Passover. *Id.* at 4. Miller recalls that he was told by Deputies Dugan and McNair that "as far as they know [Miller] is the only observant practicing Jewish inmate in the detention center." *Id.* Miller deduces from that statement that "there is no burdensome penological interest in denying me the ability to practice my religious beliefs and celebrate Passover." *Id.* He reasons that if 300 inmates were allowed to celebrate "the Christian Christmas" holiday by providing a Christmas dinner, he should have been permitted to have a Passover meal. *Id.*

Miller further alleges that because Defendants have discriminated against him based on his religion and refused to supply "Kosher for Passover" meals, it has caused him to go on an eight-day hunger strike. ECF No. 1 at 4. In his view, this is a direct violation of RLUIPA, and the Equal Protection Clause of the Fourteenth Amendment due to the preferential treatment shown to both Christian and Muslim inmates. *Id.* According to Miller, Cole's discriminatory animus toward him was previously established in Civil Action LKG-25-654 when the County Attorney stated in a footnote that Miller is not a real practicing Jew. *Id.* He states that he added Lt. Lewis's name as a Defendant because he oversees the kitchen. Miller received an email from Deputy Corporal Kempsel stating that Lt. Lewis sent out an email stating that "we are not being given Passover items, or meals." *Id.* Miller seems to imply that Lt. Lewis's email implicates him in the deprivation of his right to freely practice his religion.

As relief, Miller seeks an award of five-million dollars in punitive damages as well as injunctive relief requiring that all Jewish inmates be given items to observe Passover. ECF No. 1 at 5.

**Standard of Review**

Defendants seek dismissal of the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). In reviewing the Motion, the Court accepts the well-pleaded allegations as true and in the light most favorable to Miller. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "However, conclusory statements or a 'formulaic recitation of the elements of a cause of action will not [suffice].'" *E.E.O.C. v. Performance Food Grp., Inc.*, 16 F. Supp. 3d 584, 588 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above a speculative level." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line

between possibility and plausibility of entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557).

Although pro se pleadings are construed generously to allow for the development of a potentially meritorious case, *Hughes v. Rowe*, 449 U.S. 5, 9 (1980), courts cannot ignore a clear failure to allege facts setting forth a cognizable claim. *See Weller v. Dep't of Soc. Servs. for City of Baltimore*, 901 F.2d 387, 391 (4th Cir. 1990) ("The 'special judicial solicitude' with which a district court should view such pro se complaints does not transform the court into an advocate. Only those questions which are squarely presented to a court may properly be addressed.") (internal citation omitted)). "A court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are not more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 665 (2009).

**Discussion**

"Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *O'lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). With respect to the free exercise of religion, prison inmates retain a right to reasonable opportunities for free exercise of religious beliefs without concern for the possibility of punishment. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972) (per curiam). That retained right is not unfettered. Prison restrictions that impact on the free exercise of religion but are related to legitimate penological objectives do not run afoul of the constitution. *See Turner v. Safely*, 482 U.S. 78, 89-91 (1987). The test to determine if the restrictions are justified requires examination of whether there is a rational relation between the asserted governmental interest and the regulation in question. In addition, this court must examine whether there are alternative means of exercising the right asserted; whether accommodation of the right will impact on the orderly operations of the prison; and whether readily available alternatives to the regulation would be less restrictive.

An additional consideration in this case is the standard provided by the Religious Land Use and Institutionalized Persons Act (RLUIPA). The act provides in part that:

> [n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person-(1) is in furtherance of a compelling government interest; and (2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C.S. § 2000cc-1(a) (2019).

A substantial burden is one that "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Thomas v. Review Bd. of Ind. Employment Sec. Div.*, 450 U.S. 707, 718 (1981). Failure to accommodate religious dietary needs, when that failure is the result of intentional conduct, constitutes a substantial burden on the free practice of religion under the First Amendment's free exercise clause and RLUIPA. *See Lovelace v. Lee*, 472 F.3d 174, 201 (4th Cir. 2006) ("negligent acts by officials causing unintended denials of religious rights do not violate the Free Exercise Clause.").

Defendants assert that Miller has failed to state a constitutional claim or a claim under RLUIPA because he admits in his complaint that he was provided with a kosher diet while detained at HCDC. ECF No. 10-1 at 3. They argue that missing one celebratory religious meal is not a substantial burden on Miller's religious practice and for that reason alone it fails to state either a First Amendment or a RLUIPA claim. *Id.* In his opposition, Miller claims that it was not just one celebratory meal he was denied, he was denied 21 meals during the seven-day holiday because "regular kosher food is not kosher for Passover if it contains leavening." ECF No. 13 at 7-8. He adds that Defendants also continued to serve him kosher food containing soy in retaliation for his prior lawsuit which he could not eat because he is allergic to soy.[1] *Id.* at 8.

A substantial burden to the practice of one's chosen religious must be one that has been intentionally caused by the defendants. *See Wright v. Lassiter*, 921 F.3d 413, 419 (4th Cir. 2019) (finding no substantial burden where plaintiff wanted communal gatherings for worship but provided no direct evidence to show that other inmates would join his gatherings). Miller claims the substantial burden here is that Defendants caused him to miss all meals during Passover because the food provided contained soy which he cannot eat. He raised a similar claim that he was denied a soy-free diet at HCDC in *Miller v. Gahler*, Civil Action 1:25-cv-LKG-654 (D. Md.) which was dismissed for failure to state a claim on March 19, 2026. This Court found that Miller's claims were "not plausible" and that he had not alleged any facts showing that any of the Defendants terminated his soy-free diet. *Id.* at ECF No. 34 at 7-8. Miller's reliance on a claim that this Court has found implausible to demonstrate a substantial burden on the practice of his

---

[1] This allegation was not raised in the complaint and will not be considered here. A plaintiff may not use their memorandum in opposition to amend the complaint. *See Woodbury v. Victory Van Lines*, 286 F.Supp.3d 685, 692 (D. Md. 2017).

religion must fail. The burden he alleges was not caused by Defendants; Miller chose to refrain from eating the food provided by HCDC. Further, nowhere in the complaint does Miller assert that *all* of the food provided during Passover contained leavening, thus his claim that Defendants forced an unlawful choice on him is without factual support and thus fails to state a claim under both the First Amendment and RLUIPA.

Miller's equal protection claim fairs no better. To state a claim under the Equal Protection Clause, "a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). Although Miller asserts that Muslim and Christian inmates were given accommodations for their religious meals, he has not demonstrated that he, as a Jewish inmate, was denied kosher meals. Accordingly, there are no facts to support a claim that different religious groups were treated differently. Facts to support the essential element of an equal protection claim have not been alleged; therefore the claim must be dismissed.

Miller asks this Court to refrain from dismissing his complaint before ruling on his Motion to Appoint Pro Bono Counsel and suggests that with the assistance of counsel the deficiencies in his initial pleading could be corrected. ECF No. 13. In his motion, Miller claims he requires the assistance of counsel because he is disabled due to a stroke he had that causes him to get the facts of his cases "scrambled" in his brain. ECF No. 12. He asserts that this Court previously appointed counsel to assist him due to the same disability. *Id.* at 2-3. Miller, is mistaken regarding the basis for this Court's appointment of counsel in Civil Action 1:25-cv-LKG-654. Counsel was appointed in that case to assist Miller "in locating evidence to present on his behalf" because he claimed there were medical records that existed at local hospitals that he could not access due to his incarceration. Such is not the case here. The motion shall be denied, and the complaint shall be dismissed. A separate Order follows.

**IT IS SO ORDERED.**

LYDIA KAY GRIGGSBY
United States District Judge